Please proceed. Good morning, Your Honors, and may it please the Court. My name is Jason Soto-Valdez, a Southwestern Law School student, on behalf of Petitioner Israel Osorio Valle, who is here with us this morning. Do you have your professor with you? Yes, under the supervision of Attorney Andrew Knapp. Okay, very good. Thank you. Well, you've got a high bar because we've heard a number of students this week, and they've all done a really good job. That's putting pressure on you. That's right. This Court should hold that Israel is not subject to the persecutor bar and remand his Nakara application for its adjudication on the merits for the following two reasons. First, the immigration judge improperly shifted the burden of proof to Israel under 8 CFR Section 1240.8d, and there is no substantial record evidence in the record that supports the applicability of the persecutor bar in this case. But, counsel, the very regulation you cited ends, it says, the evidence indicates that one or more grounds for mandatory denial of the application for relief may apply. All the government has to show here is that, based upon the affiliations that your client had, that the government has met that rather minimal bar that it may apply. They don't have to prove that these things happened. They have to show that it may apply, and then your client has to show that it didn't. Your Honor, this Court has long held in the BIA as well that mere membership in an organization, even one that persecutes, is insufficient to bar someone for relief under the persecutor bar. Given that DHS here only submitted generalized reports of the security forces in which Israel served, had a bad reputation for human rights violations, all it shows is that Israel was a member of the security forces that had a bad reputation. If it's not sufficient for the bar to apply just on mere membership evidence. What about its assertion in the record that with respect to security forces, almost a certainty that during the time that he was in, involved, that there were human rights violations, or with respect to national police, there's a high probability that any member of the force at that time would have engaged in or participated. So it's not just mere membership, they're trying to put almost a sense that it was so bad, so widespread, that it's a fair inference that he had to have been involved in some persecution. Well, in regards to the national police, Your Honor, the record says that certainly any member prior to 1984 would have been involved in these human rights violations. However, here Israel joined the national police force in September of 1983, at which time he entered as a student in the academy and was not a police officer until about March of 1984. So that statement is not applicable in this case. So as a matter of fact, you're saying the record doesn't show he was in that time period. Correct. In fact, the incidents outlined in the reports in this case all fall outside the time and place of Israel's service in the security forces. Additionally, this court in Abudiono v. Lynch said that the government must make a threshold showing of particularized evidence, raising the inference that each element of the persecutor bar could be met before placing the burden on the applicant to rebut it under the regulation. Following Abudiono, before the immigration judge shifted the burden to Israel under Section 1240. But what about, you mentioned the national police, what about his being a member of the, I don't know if I pronounced it correctly, the Atlantical Battalion in 1981? Yes. Does that fall within that period of gross human rights violations? It's not the one cited in the report, Your Honors. There is incidents that occurred in December of the year in which Israel left the battalion, which was his service ended in November of 1981. And the report does outline some incidents that occurred in December of 1981. But again, Israel was not in service at the time that those incidents outlined that are shown in the report. I must have looked at different material than you did, because what I saw indicated that when he was in the First Brigade, there were a whole bunch of human rights violations that occurred contemporaneous with his involvement with respect to the Atlantical Battalion, same thing. The national police, he was in there for five years. Again, the same thing. And the burden, as I indicated at the beginning of our discussion, all the government has to show is that these things may apply. It does not have to prove them. And we have, it's unusual to have three of these kinds of organizations. Sometimes we get cases with one, and there's an argument about that. But you've got three of them, three of them with horrible human rights records. Your client's account of what he did in each of those organizations is possibly just inherently unbelievable. I mean, you know, he was a member of these things. One of them, maybe, I don't know. But at least the government has met this may apply standard, has it not? Well, Your Honor, not under Budiono v. Lynch, where this Court said that before the burden shifts under the regulation, you should be able to infer from the record that each element of the bar has been met. Right here there was no nexus. The immigration judge ---- But that's as to the government's case, I take it, you're talking. Can I ask you about the, because your time is running out, can I ask you about his testimony? Yes. Did he testify that he was there? He, Israel testified that he served in the security forces in El Salvador, all three security forces. However, here the immigration judge gave an adverse credibility finding based on ---- Well, I thought he testified that he was there when some of this stuff happened, but he didn't participate. No, Your Honor. Israel did not testify of being at the time and place of while any of this incidents occurred. Testified he did not participate. He testified that he did not participate in any human rights violations, and as all the incidents that are reported in the generalized report submitted by DHS in this case fell outside the time and place of where he was serving. As to the adverse ---- But you would concede if he was there at the time and place of high frequency, that might be enough to shift the burden? We would not concede to that. We would, we believe that Budyonny B. Lynch would control here. And as the immigration judge here improperly identified a wrong nexus, the immigration judge said that Israel had engaged in persecution when he had engaged in combat against Israel. And the immigration judge said that Israel had engaged in self-defense guerrillas based on their political opinion. However, it has been long held that civil war is not persecution and that legitimate governments are allowed to exercise self-defense against insurgents. Counsel, it's up to you, but do you want to save any of your time for rebuttal? Yes, I'll be reserving the rest of my time, Your Honor. Thank you. All right. Good morning, Your Honors. And may it please the Court, Daniel Smullo on behalf of the respondent. Your Honors, the evidence in this case indicates that during the Salvadoran Civil War of the 1980s, more than 50,000 people were slaughtered. While human rights violations were widespread, Petitioner distinguished himself by being a member of three particular groups. And what's the evidence? Can you respond to your opponent's assertion that the time frames of the alleged violations that were documented do not coincide with his service? Can you rebut that with some cites? Yes, Your Honor. At page 239 of the administrative record, this bears with respect to his service in the National Police. He testified that he was stationed at a city or town called Metapan, M-E-T-A-P-A-N. At page 912 to 913 of the administrative record, there are certain rights violations described broadly to the National Police. And at those pages, there are specifically, while he was stationed there, rights violations accused of the National Police. In other words, where and when he was stationed. Okay. What about with the military? With respect to the military, it's a little bit less specific. But there's certainly, with respect to his service in the atlacuddle, I'm not sure how to pronounce that, battalion, the record evidence is that a regular soldier was almost certainly involved and unlikely that he would not have known. And who said that? Where did that come from? That comes from a research and information center report. It's a part of the Department of Homeland Security. The record cites there are 760 to 761. But how was that reached, that almost certainly? I mean, does it talk about the frequency and the pervasiveness? Is there some numbers? Is there some quantification? There are some massacres attributed to this battalion. It's not entirely clear when the petitioner left the battalion. He testified to November 81. There's some evidence that he left in October 81. There's also a letter in the record that he left in December 81. Now, December 81 is unique because at that point, that battalion committed the massacre at Al-Mazot. A thousand civilians slaughtered. Women who were pregnant had their stomachs slit open. Counsel, the burden seems to be that you have to show that the BARG may apply. What case law, if any, would you rely upon to help us understand just how much proof the government has to show specifically tying the petitioner to the atrocities that were committed? In direct response to your question, there is a recent 2017 Board of Immigration Appeals presidential decision, matter of M as in Mary, B as in boy, C as in cat. That's 27 INN decisions. I think it's at page 35. That stands for the proposition that service in a location where a unit engaged in persecution during the time that it occurred suffices to indicate. In that same opinion, the board describes the burden as, quote, not particularly onerous. And the word is indicate. Indicate, yes. And if I could, Your Honor, I want to bring the Court's attention to this. This is immigration law, and it's a unique construct insofar as there's no dispute here that the petitioner is removable for having sneaked into the United States. So with respect to removability, the government has proved its case clearly and beyond doubt. Now he's seeking, excuse me, Your Honor. Do we have any law in this circuit that is consistent with what you're saying? I know there's a lot of law in other circuits. The closest case I could come to, and it doesn't quite put the point right on it, is a matter of Miranda Alvarado v. Gonzalez. That seems to be the seminal persecutor bar case in this circuit. And the other question is, was there purposeful involvement and purposeful assistance? And here that was met. My brother counsel relied heavily on Budiono v. Lynch. Budiono is a rather distinct factual case. There was no evidence in that case that the terrorist group used arms, which was an element of the statute. Here under Miranda Alvarado, the elements are purposeful involvement and purposeful assistance. And in that respect, this case, the evidence indicates that those elements are satisfied in this case. Are there any appellate cases that find that burden by the government is met when there's no specific evidence of any involvement in a particular violation or transaction or massacre, but it's based on an inference that he was there or she was there serving this particular force or something? Again, Your Honor, no. Not that I'm aware of. Matter of MBC, again, that postdates the Board's decision in this case, certainly says that that's a Serbian case, a Bosnian case, I believe. It says that service at the time and contemporaneously with the atrocities suffices to indicate. There's nothing in any circuit or in the Board decisions that says that you have to have direct evidence by an eyewitness that he participated. That's correct, Your Honor. And indeed, I mean, that would just come down to a function of recordkeeping and how good the persecutory regime is in keeping records and in desirous of keeping records. And, of course, one would presume that persecutory regimes such as these branches of the Salvatore military would not really have any incentive whatsoever to commit crimes. So where do you draw the line between mere membership not being enough and membership being enough where you don't have any specific evidence or link? The line is, I go to Fedorenko, continuum of conduct. This Court relied on it. Miranda Alvarado, the Board more recently in a matter of DR2, did the same. And the question is, what was the petitioner's role and what was the petitioner's role in light of the record evidence? If, in this case, the petitioner were merely a haircutter, to use a Fedorenko example, that's a mere member. If the petitioner were a doctor and he helped the soldiers recover from wounds, that might be a mere member. But here, petitioner testified, and it was credited, that he was an active soldier, a regular soldier, who helicoptered into battle. And the record evidence shows that soldiers, regular line soldiers, almost certainly would have been involved in such persecution. And that's what ties the two together and that's what allows this case to be indicated. Is there any evidence that that battle that he admits to having been involved in and helicoptered involved human rights violations? There is not, Your Honor. But there is, again, there's a, the record evidence is that soldiers were, quote, almost certainly involved. That's well beyond indicating. And if I could make a point, which I think is a rather important one, again, this is a petitioner who is seeking relief from removal. And the burden under the INA, it's 8 U.S.C. 1129A C4A, is at all times on the applicant for relief from removal. That burden never shifts to the government in any respect, including the persecutor bar. Where it occurs is when the evidence indicates, as it does here, that the persecutor bar may apply, not that it does apply, then the petitioner bears an additional burden that he otherwise might not bear. And how could a petitioner, once he is found to have been a member of the organization at a time and place where things happen, how could one ever prove the negative that he or she was not involved or didn't have a sign of ranking, other than testifying that all I did was X, I never did Y? What else could one do? Credible testimony certainly would suffice. Evidence that he played some non-persecutory role, such as I was a hair cutter, I was a physician, I was on medical leave, and here are the records to say that I was nowhere, I was in the hospital when these atrocities occurred. That's the type of evidence that would absolutely provide preponderance to the evidence that the bar would not apply to such an applicant. Here, we have none of that. We have incredible testimony that I knew nothing, I saw nothing, I did nothing. So it's the incredulity of his testimony that's the key here. Yes, Your Honor, that's correct. And in September of last year, the Board issued a matter of DR2, a published opinion, that holds that when a petitioner testifies incredibly as to his acts, that does not suffice to carry his burden, of course. I take it we said in Miranda-Alvarado that determining whether a petitioner assisted in persecution requires a particularized evaluation, but it does not require trigger-pulling or personal involvement, but mere acquiescence or membership in an organization is insufficient to satisfy the exception. So somewhere a little mushy. It is. And that may be by design. And so far, cases like this almost call for a case-by-case analysis. And I think that's what the Supreme Court was saying in Fedorenko with its somewhat famous footnote that let's look at the continuum of conduct. Let's look at what the evidence is as to this particular petitioner as against the record evidence as to what his organizations did or, in fact, may not have done. Again, Your Honors, this is not a case where we have a petitioner who was in the Salvadoran military during the Civil War. This is much more than that. This is a petitioner who voluntarily enlisted in two of the most infamous units, the National Police and the Atlantic Cattle Battalion, and also served in the National Police, which was mandatory military service. But we have three units that really distinguished themselves in 12 years of Civil War where at least 50,000 were slaughtered. He was there. Let me ask my colleagues if anybody has additional questions. I don't think so. So thank you very much for your argument. We'll now hear a rebuttal from distinguished counsel here. We have a new distinguished counsel. All right, here we go. Good morning. Good morning, Your Honors, and may it please the Court. My name is Miriam Zaraga Rodas, law student under the supervision of Attorney Andrew Knapp. Your Honor, here there's no evidence that Israel ever was personally involved or assisted in the persecution of others, as a respondent will have you believe. In response to the reports that Israel was present in the National Police during the persecution in Metapan, while those incidents did occur, Israel was in training during that period of time, so it would be unlikely that he would actually be present, and he testified to that in court. Second, under the Miranda-Alvarado framework, there has to be some purposeful involvement in personal assistance, and here there's just no substantial evidence of that. Counsel, what do we do with the Supreme Court's discussion about a continuum? We look at the whole pattern. In cases like this, we usually have one entity involved. Here we have three, each one of which has been damned by human rights organizations. What role, if any, should the involvement in three of these entities play in our analysis about whether the persecutor bar has been met? Well, I think it's important to note that these were three legitimate organizations recognized by the Salvadorian government. They were protecting the country against insurgents. Oh, I see. This court has found that even acts in civil war are not necessarily persecution. Where's the line between responding to rebellion and persecution? Well, I think that's where it comes back to showing that the specific individual was involved at a time and place that they purposely assisted in some type of persecution. So if somebody were involved in the SS, for example, in World War II, that was certainly a government-sanctioned entity, did lots of horrible things. Is it your position that if somebody was a long-term member of the SS that the government would have to show specifically trigger-pulling here or there or other horrible acts in order to make sure that the persecutor bar should apply in that situation? Well, I think it would be enough if they had shown that at least the person was present when these were You're saying they have to show that you were present at an actual atrocity. Yeah, and I think that would show that there is at least some evidence that that person was present, which in this case these are just generalized reports where they don't necessarily indicate that Israel was present. Other questions by my colleagues? Thank you very much. We want to thank our two fine law students. You both did a wonderful job. Thank the professor, thank the law school. We're always pleased to have these fine young advocates here. I hope you'll come and see us often. Thank you very much.
judges: Schroeder, M. Smith, Chen